WHEAT (WASHINGTON v.).    See Case No. 17,238.

---

## Case No. 17,483.

### WHEATLEY v. HOTCHKISS.

[1 Spr. 225;[1] 16 Law Rep. 692.]

District Court, D. Massachusetts. Feb., 1854.

SEAMEN'S WAGES — GREEN HANDS — ADMIRALTY PRACTICE—SECURITY FOR COSTS.

1. The libellant shipped as an able seaman, but was in fact competent to perform only the duties of a green hand. *Held*, that the measure of compensation for his services is not the wages of a green hand for such a voyage, but only what his services were actually worth to the owners.

2. The practice in admiralty, of exempting seamen from giving security for costs, is on account of their presumed inability.

[Cited in The Arctic, Case No. 509a.]

3. Any person may sue there without giving such security, upon proof of inability.

4. This rule does not necessarily apply to appeals. And where there is evidence that a seaman is of ability, the court will order him to give security for such costs as the appellate court may decree, unless he shall prove himself unable to do so by satisfactory affidavits.

This was a libel filed by a seaman of the ship Harvard, against the master, for wages, during her late voyage from Calcutta to Boston. The respondent admitted that the libellant shipped at Calcutta, as an able seaman, and by the articles was to have $30 per month, but alleged that the libellant was grossly incompetent to perform the duties of an able seaman, and was so ignorant of all ship's work, that he was not worth on board more than half the wages of an able seaman; and that the respondent had tendered to him the sum of $15 per month, as full compensation for his services during the voyage.

---

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams. Jr., Esq., and here reprinted by permission.]

F. W. Sawyer, for libellant.
R. H. Dana, Jr., for respondent.

SPRAGUE, District Judge, after stating that upon the evidence he thought that the libellant was not an able seaman, remarked that there was more difficulty in deciding what amount of compensation should be accorded to him, for such services as he rendered on board of the ship. Having failed to execute his contract as set forth in the articles, he has no right to claim the $30 per month, which were the wages therein stipulated; but only such a sum as his services fairly deserved. In applying a quantum meruit to seamen's services, there is some difficulty. In case of services rendered on shore, when a laborer brings an action against his employer for their value, it is competent for him to prove the market value of similar services, as one element to show the value of his own services, in the particular case. But the master on shore has the power to discharge an incompetent servant, when he chooses, and to substitute another in his place. At sea there is no power of substitution; the master must continue an inefficient or ignorant seaman to the end of the voyage. Beside this, the ship needs but a limited number of hands, and those are distributed into able seamen, ordinary seamen, green hands and boys, from each of which classes are expected peculiar services, and of each of which the ship is supposed to have its exact complement. If the man, who ships as an able seaman, is incompetent to do his duty as such, he not only deprives the ship of what may be essential service, but his deceit wrongs the other able seamen, by compelling them to do his work, while he remains an ordinary seaman, or green hand, on a vessel already quite supplied with persons of this description. A supernumerary green hand may be worthless on board of a ship, to which, at the very time, an able seaman is essential; and the measure of such a person's value is not the wages which a green hand can command in port, but the value of that person, to that ship, under all the circumstances. Any other rule would be contrary to policy, as well as justice, and would encourage men to ship for duty which they were incompetent to discharge, in the confidence that failure would do nothing worse than throw them back, on the wages of that class of seamen to which they properly belonged.

In such cases, the burden is on the libellant to show the value of his services, in this respect. No such proof has been furnished. In this state of the evidence, the court cannot award him more than the sum tendered. Libel dismissed, without costs.

In the above case, the libellant claimed an appeal, and the respondent moved that he be required to give security for costs. It

appeared that the respondent had recently paid the libellant above $400, as damages in a suit for a tort. SPRAGUE, District Judge, said that the practice of exempting seamen from giving security for costs. was founded on their presumed inability. Any other person may sue in the admiralty, without giving security, upon proof of inability; and a seaman may be required to give security. if his ability is proved. This libellant has had one hearing, without giving security, and now. upon his claiming an appeal, there is evidence tending to show his ability to give security. for costs, and he must stipulate with surety for such costs as the appellate court may decree, unless he prove himself unable to do so by satisfactory affidavits.